## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ERIC THOMAN, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>   v.<br><br>StudentUniverse.com Inc.,<br><br>         Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

Plaintiff Eric Thoman ("Plaintiff"), by and through his undersigned counsel, brings this lawsuit on behalf of himself and all others similarly situated against StudentUniverse.com Inc. ("StudentUniverse" or "Defendant"), an online provider of discount travel to young adults and students. The allegations herein are based upon Plaintiff's personal knowledge as to matters relating to himself and upon information, belief, and the investigation of counsel as to all other matters.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who purchased travel from StudentUniverse, whose travel was cancelled by travel providers in response to the Coronavirus Disease 19 ("Covid-19") pandemic, and who Defendant charged a processing fee to receive a refund.

2.     StudentUniverse is one of the world's leading travel booking sites for students and promotes itself as "empower[ing] young adults to experience the world with discount travel."[1]

3.     StudentUniverse launched its website in 2000 and was acquired in 2015 by Flight Centre Travel Group Limited ("Flight Centre"), an Australian travel conglomerate whose shares are listed on the Australian Securities Exchange.[2]  Since then StudentUniverse has expanded to the United Kingdom and Australia, "helping students worldwide travel more for less."[3]  Today, it has partnered with more than 90 airlines and offers discount flights, hotels, tours, activities, and airport transfers.  Millions of students use StudentUniverse every year.[4]

4.     On February 25, 2020, Plaintiff booked through StudentUniverse one-way airfare on United Airlines between NewYork, New York and Split, Croatia.  The flight was scheduled to depart on June 3, 2020.  Mr. Thoman paid StudentUniverse a total of $464.89, which included airfare, travel insurance and a seat selection fee.

5.     Prior to departure, United Airlines unilaterally canceled Plaintiff's flight.

6.     United Airlines has publicly announced that it would refund in full airfare for flights it had cancelled due to COVID-19 travel restrictions.

7.     Once Plaintiff learned that his flight had been cancelled, he telephoned StudentUniverse to request a refund.  The StudentUniverse representative advised Plaintiff that

---

[1] https://www.studentuniverse.com/ (last accessed on July 8, 2020).

[2] https://www.fctgl.com/wp-content/uploads/2019/10/FLT-Annual-Report-FY19.pdf (last visited on July 8, 2020).

[3] https://www.studentuniverse.com.au/about-us (last visited on July 8, 2020).

[4] https://www.businesswire.com/news/home/20151221005748/en/StudentUniverse-Acquired-Flight-Centre-Travel-Group (last accessed June 30, 2020).

to process a fare refund on his behalf, he would be charged by StudentUniverse a $40 "processing fee."

8.     On May 21, 2020, StudentUniverse notified Plaintiff that he would be refunded $375.86.  This amount is $81.08 less than Plaintiff had paid to StudentUniverse.

9.     StudentUniverse did not previously disclose that a "processing fee" would be required for it to process any refund request.  Such policy is not written in the Terms and Conditions linked to Plaintiff's itinerary and Plaintiff did not agree to it.

10.     Hundreds, if not thousands, of other United States travelers similarly have been charged unlawful "processing fees."  In response to public complaints, StudentUniverse has admitted that "nominal handling fees are being used to cover the extra costs of operations during this unprecedented time."[5]  StudentUniverse has further sought to justify its unlawful practice:  "We are not trying to profit, just attempting to cover costs during this time."[6]

11.     While cancellations during the COVID-19 pandemic are unfortunate, Plaintiff and Class members should not be required to bear the risk of loss in these circumstances or charged after-the-fact processing fees for refunds.

12.     Plaintiff seeks, for himself and the Class members, the return of processing fees StudentUniverse charged to request refunds, an injunction prohibiting Student Universe from charging such fees going forward, and any other relief as may be just and proper under the law.

---

[5] https://twitter.com/studentuniverse/status/1252586530104885251 (last visited on July 8, 2020).
[6] *Id.*

**JURISDICTION AND VENUE**

13.     This Court has original jurisdiction under the Class Action Fairness Act, 28

U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of

$5,000,000, exclusive of interests and costs, and is a class action in which Plaintiff and one or

more of the other Class members are citizens of a state different from the Defendant. Namely,

Plaintiff is a Connecticut citizen and Defendant is a Massachusetts citizen.

14.     Furthermore, Plaintiff alleges that more than two-thirds of all of the members of

the proposed Class in the aggregate are citizens of a state other than Massachusetts, where this

action is originally being filed, and that the total number of members of the proposed Class is

greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

15.     This Court has personal jurisdiction over Defendant because it resides in this

District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because

Defendant resides in this District and is a resident of the state in which the District is located.

Defendant maintains its principal place of business in Waltham, Massachusetts and, upon

information and belief, events and transactions underlying the claims herein, including

StudentUniverse's decision-making regarding its refund policy challenged in this lawsuit,

occurred within this judicial District.

17.     Furthermore, StudentUniverse specifies that venue in this Court is proper, vests

this Court with jurisdiction and provides for the uniform application of Massachusetts law in its

online Terms and Conditions[7] as follows:

---

[7] https://www.studentuniverse.com/about-us/terms-of-use (last accessed on July 8, 2020).

This agreement shall be governed by, and construed and enforced in accordance with, the laws of The Commonwealth of Massachusetts, U.S.A., without regard to its conflicts of laws principles. The United Nations Convention on Contracts for the International Sale of Goods is expressly disclaimed. You hereby consent to this choice of law, and to the exclusive jurisdiction and venue of the state and federal courts located in the Commonwealth of Massachusetts, U.S.A., for all disputes arising out of or relating to this agreement and/or to the use of this website. Use of this website is unauthorized in any jurisdiction that does not give effect to all provisions of these terms and conditions, including without limitation this paragraph.

## CHOICE OF LAW ALLEGATIONS

18.     The State of Massachusetts has sufficient contacts to Class members' claims such that uniform application of Massachusetts law to those claims is appropriate.

19.     StudentUniverse is headquartered in Waltham, Massachusetts, conducts substantial business in Massachusetts, a sizable percentage of the Class is located in Massachusetts, and, upon information and belief, all core decisions that gave rise to the claims set forth herein were made in Massachusetts.

20.     StudentUniverse has selected Massachusetts as its chosen law by including the Massachusetts choice-of-law provision in its Terms and Conditions. StudentUniverse acquiesces to the application of Massachusetts law and expects that Massachusetts law will apply to claims brought by its customers.

21.     The Commonwealth of Massachusetts also has a strong regulatory interest in applying its law to all Class members' claims. The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq*, *et seq.*, in particular, is designed to preserve a business climate in Massachusetts free of unfair and deceptive practices. If Massachusetts were only able to address unfair business conduct when the injured consumer resides in Massachusetts, that consumer protection law would be largely ineffective in regulating companies that conduct business nationwide. Violators would be able to keep the vast majority of their ill-gotten gains

(all those obtained from non- Massachusetts consumers), leaving Massachusetts -based

companies like StudentUniverse undeterred from engaging in similar conduct in the future.

## PARTIES

22.     Plaintiff Eric Thoman is a citizen and resident of Connecticut who purchased

from StudentUniverse a one-way flight between New York, New York and Split, Croatia on

United Airlines.  The airline cancelled the flight.  The airline was offering full refunds for flights

it had cancelled due to the COVID-19 global pandemic.  StudentUniverse nevertheless charged

Mr. Thoman a $40 processing fee in order to request his refund.  At purchase, StudentUniverse

did not disclose that a "processing fee" would be required for it to process any refund request.

Such policy is not written in the Terms and Conditions linked to Plaintiff's itinerary and Plaintiff

did not agree to it.

23.     Defendant StudentUniverse.com Inc. is a Delaware corporation headquartered at

headquartered at 130 Turner Street, Suite 530, Waltham, Massachusetts 01741.  StudentUniverse

is a wholly-owned subsidiary of Flight Centre, an Australian travel conglomerate headquartered

in South Brisbane, Australia whose shares are listed on the Australian Securities Exchange.[8]

## FACTUAL ALLEGATIONS

24.     Launched in 2000, StudentUniverse is the largest online travel agency for college

students and youth, headquartered near Boston, Massachusetts, with offices in London, Toronto,

New York, and the Philippines.  It believes "that travel is essential to a modern education and

that students return enlightened and inspired."[9]

---

[8] https://www.fctgl.com/wp-content/uploads/2019/10/FLT-Annual-Report-FY19.pdf (last visited on July 8, 2020).

[9] https://www.studentuniverse.co.uk/about-us (last accessed on July 8, 2020); https://www.businesswire.com/news/home/20151221005748/en/StudentUniverse-Acquired-Flight-Centre-Travel-Group (last accessed on July 8, 2020).

25.     StudentUniverse's estimated annual revenue is between $13 - 14 million.[10]
StudentUniverse's parent company, Flight Centre, reported revenue for fiscal year 2019 of over
$3 billion (Australian currency).[11]  Flight Centre's Americas businesses (including Defendant
StudentUniverse) delivered an underlying profit before tax in excess of $100 million (Australian
currency).[12]

26.     Millions of students worldwide use StudentUniverse.  It has been voted by its
users as "Best Youth Travel Agent" in the Global Youth Travel Awards in 2015, 2016 and
2018."[13]

27.     Despite its status as a growing and profitable company, StudentUniverse has
sought to shift its COVID-19-related losses onto its customers by charging Plaintiff and Class
members unlawful refund processing fees for travel cancelled by travel providers due to COVID-
19 travel restrictions.

28.     On February 25, 2020, Plaintiff booked through StudentUniverse one-way airfare
between New York, New York and Split, Croatia.  The flight was scheduled to depart on June 3,
2020.  Mr. Thoman paid StudentUniverse a total of $464.89, which included airfare, travel
insurance and a seat selection fee.   Plaintiff received an email confirming his itinerary which
contained a link to his itinerary which also linked to the Terms of Use page on Defendant's

---

[10] https://www.dnb.com/business-directory/company-
profiles.studentuniversecom_inc.494a2fd4f0dd2e9c71b30e435280ea8a.html (last accessed on
July 8, 2020);
https://www.buzzfile.com/Search/Company/Results?searchTerm=studentuniverse.com&type=1
(last accessed on July 8, 2020).

[11] https://www.fctgl.com/wp-content/uploads/2019/10/FLT-Annual-Report-FY19.pdf (last
accessed on July 8, 2020).
[12] *Id.*
[13] https://www.studentuniverse.com/about-us (last accessed on July 8, 2020).

website.  The following day StudentUniverse credited the $7.95 seat selection fee to Plaintiff's

bank account because it was unable to accommodate a seat request.

29.     Prior to departure, United Airlines unilaterally canceled Plaintiff's flight.

30.     United Airlines publicly announced that it would refund in full airfare for flights

it had cancelled due to COVID-19 travel restrictions.

31.     When Plaintiff learned that his flight had been cancelled, he contacted by

telephone StudentUniverse to request a refund.  The StudentUniverse representative advised

Plaintiff that to process a fare refund on his behalf, he would be charged by StudentUniverse a

$40 "processing fee."

32.     On May 21, 2020, StudentUniverse notified Plaintiff that he would be refunded

$375.86.  This amount is $81.08 less than Plaintiff had paid to StudentUniverse.

33.     StudentUniverse did not previously disclose that a "processing fee" would be

required for it to process any refund request.  Such policy is not written in the Terms and

Conditions linked to Plaintiff's itinerary and Plaintiff did not agree to it.

34.     Numerous StudentUniverse customers have complained about these unlawful,

after-the-fact "processing fees."

35.     For example, on April 28, 2020 a traveler wrote:

> NEVER use this website to book your…
>
> NEVER use this website to book your ticket!!! A few days after I placed
> my ticket, I received an email from the airline informing me that the flight
> was cancelled, so I sent an email to the official email of Student Universe
> to ask when I could get my refund, and I received a reply three days later,
> telling me that I will get the refund but need pay $ 40 to get it. my bank
> account shows that the ticket I purchased included a fare of $790, and
> other 10 dollars were charge by the student universe, but it was only 790
> dollars in a row. There is no other ticketing website that would charge this
> fee. Never use this site again, this site should be closed.[14]

---

[14] https://ie.trustpilot.com/review/studentuniverse.com?page=2 (last visited on July 8, 2020).

36.     As another example, on May 5, 2020 a traveler wrote:

**Not Taking Care Of Customers During Covid-19**

My flight with Iceland Air has been canceled, and although IcelandAir is offering customers full refunds, StudentUniverse is charging an additional $40 per ticket refund. So it's either fork over an extra $40 per ticket or lose your entire refund. Sounds fair right?[15]

37.     There also have been several complaints lodged with the Better Business Bureau against StudentUniverse over the unlawful "processing fees" as a condition to receiving a full refund for travel cancelled due to the COVID-19 pandemic.[16]

38.     While customers in the United States are still being charged these unlawful processing fees, Student Universe customers in Australia recently received relief only after the Australian Competition & Consumer Commission ("ACCC") stepped in to rectify the over *6,000* complaints it had received.[17]  On May 3, 2020, the ACCC announced that that Flight Centre had agreed to stop charging customers hundreds of dollars in cancellation fees in order to receive a refund for travel cancelled due to the COVID-19 pandemic.  This agreement applies to several of Flight Centre's brands, including StudentUniverse Australia.  StudentUniverse (and any other of Flight Centre's brands in the United States who have implemented this unlawful practice here) should be held accountable in the United States, too.

---

[15] https://www.sitejabber.com/reviews/studentuniverse.com#209 (last visited on July 8, 2020).
[16] https://www.bbb.org/us/ma/south-waltham/profile/travel-agency/studentuniverse-0021-80752/customer-reviews (last visited on July 8, 2020).
[17] https://www.accc.gov.au/media-release/flight-centre-to-refund-cancellation-fees (last visited on July 8, 2020).

## CLASS ACTION ALLEGATIONS

39.     Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of himself and the Proposed Nationwide Class:[18]

> **Nationwide Class**: All individuals residing in the United States and its territories who purchased travel from StudentUniverse, whose travel was cancelled by travel providers in response to the Covid-19 pandemic, and who Defendant StudentUniverse charged a processing fee to receive a refund.

40.     Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of himself and the proposed Multi-State Consumer Protection Class:

> **Multi-State Consumer Protection Class**: All individuals who are residents of the following states and United States territories: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia, who purchased travel from StudentUniverse, whose travel was cancelled by travel providers in response to the Covid-19 pandemic, and who Defendant StudentUniverse charged a processing fee to receive a refund.

41.     Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of himself and the proposed Connecticut Class:

> **Connecticut Class**: All individuals residing in the State of Connecticut who purchased travel from StudentUniverse, whose travel was cancelled by travel providers in response to the Covid-19 pandemic, and who Defendant StudentUniverse charged a processing fee to receive a refund.

42.     Excluded from the Class is Defendant, any entity in which Defendant has a

controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and

---

[18] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, the Multi-State Consumer Protection Class, and the Connecticut Class.

employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the

right to modify or amend the Class definitions, as appropriate, during this litigation.

43.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**  The members of the Class are so

numerous that the joinder of all members is impracticable. While the exact number of Class

members is unknown to Plaintiff at this time, Plaintiff believes there are at least hundreds if not

thousands of individuals who were improperly charged a processing fee by Defendant to receive

travel refunds for travel cancelled due to the COVID-19 pandemic.

44.     **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).** There

are numerous questions of law and fact common to the Class, which predominate over any

questions affecting only individual Class members. These common questions of law and fact

include, without limitation:

a.      Whether Defendant engaged in the conduct alleged;

b.      Whether Defendant has a policy and/or procedure of requiring the payment of a processing fee to it before refunding monies paid for now cancelled travel;

c.      Whether Defendant violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

d.      Whether Defendant converted Plaintiff and Class members' refunds and/or rights to refunds;

e.      Whether Defendant violated the common law of unjust enrichment;

f.      Whether Plaintiff and Class members suffered injury as a result of the Defendant's actions, and if so, the extent of monetary damages; and

g.      Whether injunctive and equitable relief is appropriate.

45.     **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claim is typical of those of other

Class members because Plaintiff purchased travel from Defendant that was unilaterally cancelled

through no fault of his own and was charged a processing fee to receive from Defendant a

refund.  Plaintiff's claim is based upon the same legal theories as those of the other Class

members. Plaintiff and other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

46.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).**  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's interests also do not conflict with the interests of the other Class members who he seeks to represent. Plaintiff's counsel are competent and experienced in litigating class actions, including consumer protection litigation.

47.     **Superiority of Class Action. Fed. R. Civ. P. 23(b)(3).**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no inordinate difficulty in the management of this action as a class action.

48.     All members of the proposed Class are readily ascertainable. Defendant has access to addresses and other contact information for the hundreds or thousands of members of the Class, which can be used for providing notice.

49.     Damages for any individual Class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

50.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because StudentUniverse acted or refused to act on grounds generally applicable to the Class, so

that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

51.     Consistent with applicable case law and constitutional standards, Plaintiff intends to present to the Court at the class certification proceeding, a trial plan and overall proposed method of efficiently presenting to the trier of fact the common law, statutory, and declaratory relief claims presented in this action. For purposes of the complaint, Plaintiff notes that declaratory relief is appropriate for the Nationwide Class and that certain other claims may be grouped together for the trier of fact to resolve. Plaintiff intends to seek to apply the law of the appropriate similar states, with appropriate grouping of certain states with similar laws. Certain states with "unique" issues and with limited number of Class members may not be included in Plaintiff's motion for class certification.  Plaintiff believes that the majority of Class members will be able to proceed with trial in this Court on a class wide basis, with the ultimate trial plan requiring information currently in the exclusive possession of Defendant and third parties.

## CLAIMS FOR RELIEF

### COUNT ONE
### <u>CONVERSION</u>
**(On Behalf of the Nationwide Class)**

52.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

53.     Plaintiff brings this action individually and on behalf of the Nationwide Class.

54.     Plaintiff and Class members paid Defendant processing fees in connection with their request for refunds of travel unilaterally cancelled by travel providers.

55.     Plaintiff and the other members of the Class have an undisputed right to immediate refunds, in lieu of vouchers or future credits, without paying processing fees.

56.     StudentUniverse wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by charging purchasers of canceled trips a processing fee to obtain a refund.  Defendant unlawfully retained the monies Plaintiff and the Class members paid in processing fees.

57.     This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that refunds were held hostage by StudentUniverse unless they paid Defendant a processing fee.

58.     As a result of Defendant's conversion of the money owed them, Plaintiff and Class members have lost the use of their money during a worldwide public health and economic crisis.

**COUNT TWO**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class)**

59.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

60.     Plaintiff brings this action individually and on behalf of the Nationwide Class.

61.     Plaintiff and Class members are consumers who paid Defendant for travel that when cancelled by travel providers Defendant charged additional, undisclosed, processing fees to obtain a refund.

62.     Defendant benefitted when it charged additional, after-the-fact processing fees to refund monies paid for travel that had been cancelled by travel providers.

63.     Plaintiff and members of the Class conferred upon Defendant a benefit in the form of money for processing fees.  In paying for such processing fees, Plaintiff and members of the Class conferred benefits that were non-gratuitous.

64.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

65.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for processing fees covering canceled trips. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

66.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and the Class members are entitled to and seek disgorgement and restitution of Defendant's wrongful profits, processing fees charged for refunds, and benefits in a manner established by the Court.

**COUNT THREE**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of the Multi-State Consumer Class)**

67.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

68.     Plaintiff brings this action individually and on behalf of the Multi-State Consumer Class.

69.     Plaintiff and Class members are consumers who paid Defendant for travel that when cancelled by travel providers Defendant charged additional, undisclosed, processing fees to obtain a refund.

70.     Plaintiff and Class members have been injured as a result of Defendant's violations of the state consumer protection statutes, which also provide a basis for redress to

Plaintiff and Class members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

71.     Through its conduct, Defendant violated the following state consumer laws prohibiting unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices:

> The Alabama Deceptive Trade Practice Act, Ala, Code §§ 8-19-1, *et seq.*; the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471, *et seq.*; the Arizona Consumer Fraud Act, A.R.S. § 44-1522, *et seq.*; the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, *et seq.*, the California Consumer Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*; the Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), *et seq.*; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), *et seq.*; the Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, *et seq.*; the District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*; the Georgia Uniform Deceptive Trade Practices Act, Ga. Code §§10-1-370, *et seq.*; the Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), *et seq.*, and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), *et seq.*; the Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), *et seq.*, and Idaho Code § 48-603C, *et seq.*; the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, *et seq.*, and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. § 510/2(a)(5), (7) and (12), *et seq.*; the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), *et seq.*; the Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, *et seq.*; the Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), *et seq.*; the Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110, *et seq.*; the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*; the Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), *et seq.*, and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, *et seq.*; the Maryland Consumer Protection Act, Md. Code Commercial Law, § 13-301(1) and (2)(i), and (iv) and (9)(i), *et seq.*; the Massachusetts

Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq.*; the Michigan Consumer Protection Act, M.C.P.L.A. § 445.903(1)(c)(e), (s) and (cc), *et seq.*; the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), *et seq.*, the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat.§ 8.31, subd. 3(a), *et seq.*; the Mississippi Consumer Protection Act, Miss. Code §§ 75-24-1, *et seq.*; the Missouri Merchandising Practices Act, Mo. Ann. Stat. §407.020(1), *et seq.*; the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §§ 30-14-101, *et seq.*; the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq.*; the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann.§ 598.0915(5) and (7), *et seq.*; the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), *et seq.*; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*; the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12- 2(D)(5)(7) and (14) and 57-12-3, *et seq.*; the New York Business Law, N.Y. Gen. Bus. Law § 349(a), *et seq.*; the North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), *et seq.*; the North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*; the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A), (B)(1) and (2), *et seq.*; the Oklahoma Consumer Protection Act, 15 Okl. Stat. Ann. § 753(5),(7) and (20), *et seq.*; the Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e)(g) and (u), *et seq.*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*; the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq.*; the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10, *et seq.*; the South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*; the Tennessee Consumer Protection Act, Tenn. Code §§ 47-18-101, *et seq.*; the Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*; the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1) and (2)(a) and (b); the Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*; the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5)(6) and (14), *et seq.*; the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*; the West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*; the Wisconsin Deceptive Trade Practices Act, W.S.A. §100.20(1), *et seq.*; and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii) and (xv), *et seq.*

72.     Defendant violated the Multi-State Consumer Class states' unfair and deceptive acts and practices laws when it failed to refund monies paid for travel that had been cancelled by travel providers unless Plaintiff and the Class paid additional, undisclosed and after-the-fact processing fees.

73.     As a direct and proximate result of Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices, Plaintiff and Class members have suffered ascertainable losses and injuries, including funds paid as processing fees.

74.     As a result of Defendant's violations, Defendant was unjustly enriched.

75.     Plaintiff brings this action on behalf of himself and all similarly situated persons for the relief requested and to protect Plaintiff, the Class, and the public from Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful practices. Defendant's wrongful conduct has had widespread impact on the public at large.

76.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT FOUR**
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**(On Behalf of the Connecticut Class)**

77.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

78.     Plaintiff brings this action individually and on behalf of the Connecticut Class.

18

79.     At all relevant times referenced herein, Defendant was a person within the meaning of Conn. Gen. Stat. § 42-110a(3).

80.     Plaintiff and Connecticut Class members paid Defendant for travel that when cancelled by travel providers Defendant charged additional, undisclosed, processing fees to obtain a refund.

81.     Defendant does business in Connecticut, sells travel in Connecticut, charged unlawful processing fees in Connecticut, and engaged in deceptive acts and practices in connection with the charging of processing fees in Connecticut and elsewhere in the United States.

82.     In Connecticut, the Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*, prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

83.     Defendant, in selling travel and in charging refund processing fees, was acting in the conduct of its "trade and commerce" as those terms are defined under the Connecticut Unfair Trade Practices Act.  Conn. Gen. Stat. § 42-110a(4).

84.     Defendant engaged in unfair and deceptive acts in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*, when it charged undisclosed, after-the-fact, processing fees to obtain refunds for Plaintiff and the Connecticut Class for travel cancelled by travel providers due to the COVID-19 pandemic.

85.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Connecticut and throughout the United States.

86.     Defendant's deceptive acts proximately caused actual injury, damage and ascertainable losses to Plaintiff and the Connecticut Class members.

87.      Plaintiff and Connecticut Class members should not be required to pay additional fees to Defendant to get their money back for cancelled travel.

### COUNT FIVE
### CLAIM FOR INJUNCTIVE AND/OR EQUITABLE RELIEF
#### (On Behalf of the Nationwide Class)

88.      Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

89.      Plaintiff brings this action individually and on behalf of the Nationwide Class.

90.      Plaintiff and Class members have been injured and, unless Defendant's unlawful conduct is enjoined, will continue to be injured in their business and property as a result of Defendant's continuing unlawful conduct.

91.      An actual controversy exists between Defendant and Plaintiff concerning:

   a.   Whether StudentUniverse ever informed Plaintiff and Class members or anywhere disclosed prior to purchasing travel that it would impose a processing fee to obtain a refund for cancelled travel;

   b.   Whether it is unfair and deceptive for StudentUniverse to require processing fees to receive refunds when travel was cancelled by travel providers through no fault of Plaintiff or the Class;

   c.   Whether Defendant intentionally and actively misrepresented, and is continuing to intentionally and actively misrepresent, to Plaintiff and members of the Class that it may collect processing fees before refunding monies paid to it for travel that was cancelled through no fault of Plaintiff or the Class.

92.      Plaintiff requests a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, that Defendant's aforementioned conduct is unlawful as alleged above.

93.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The declaratory relief sought here does not fall within any of the exemptions set forth in that Act.

94.     Accordingly, Plaintiff prays this Court declare that StudentUniverse is required to stop advising consumers falsely of its "policy" concerning non-refundability of monies paid to it for travel and further disclose to consumers that they are entitled to refunds without first paying to Defendant additional processing fees.

95.     The requested declaratory relief will generate common answers that will resolve controversies that lie at the heart of this litigation and will allow Plaintiff to obtain relief that directly redresses the injury suffered. Resolving these issues in this class action will eliminate the need for continued and repeated litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff and the Class, and award the following relief:

A.      An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Class and Plaintiff's counsel as counsel for the Class;

B.      Damages and refunds in the amount of processing fees paid for refunds for which Plaintiff and the Class were already entitled;

C.      Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D. Costs, expenses, and reasonable attorney's fees as permitted by law;

E. Pre-judgment and post-judgment interest on all sums awarded;

F. Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from charging processing fees for requesting refunds travel provider cancellations due to the COVID-19 pandemic; and

G. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all claims in this action.

Dated:  July 14, 2020                              Respectfully submitted,

/s/ Jonathan M. Jagher

Jonathan M. Jagher (MA #650444)
Kimberly A. Justice (*pro hac vice* forthcoming)
FREED KANNER LONDON & MILLEN LLC
923 Fayette St
Conshohocken, PA  19428
Tel. (610) 234-6487
jjagher@fklmlaw.com
kjustice@fklmlaw.com

Katrina Carroll (*pro hac vice* forthcoming)
CARLSON LYNCH, LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Tel. (312) 750-1265
kcarroll@carlsonlynch.com

Gary F. Lynch (*pro hac vice* forthcoming)
CARLSON LYNCH LLP
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
Tel. (412) 322-9243
glynch@carlsonlynch.com

Michael K. Yarnoff (*pro hac vice* forthcoming)
THE KEHOE LAW FIRM
2 Penn Center Plaza, Suite 1020
1500 JFK Boulevard
Philadelphia, Pennsylvania 19102
Tel: (215) 792-6676
myarnoff@kehoelawfirm.com

*Counsel for Plaintiff and the Proposed Class*